WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John C. Stevenson,<br><br>    Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security,<br><br>    Defendant. | No. CV-05-395-PHX-ROS<br><br>**ORDER** |

Plaintiff John C. Stevenson ("Stevenson") challenges the Commissioner's denial of his application for Disability Insurance Benefits. Stevenson asks the Court to either reverse the judgment and order payment of benefits or remand for further administrative proceedings. In response, the Commissioner seeks a remand for further proceedings. The Court believes further development of the underlying facts is necessary and remands for the Administrative Law Judge ("ALJ") to develop the record.[1]

---

[1] The Court did not set this matter for oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. See Mahon v. Credit Bur. of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999), modified, No. 97-17298, 1999 U.S. App. LEXIS 8016; Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

## BACKGROUND

Stevenson filed an application for Disability Insurance Benefits on February 10, 2003. (Doc. # 80) That application stated Stevenson became unable to work on January 1, 1969 due to osteomyelitis, chronic acute sinusitis, and lumbar injuries. (Doc. # 80) Stevenson's claim was initially denied. (Doc. # 48) In a request for reconsideration, Stevenson stated that he disagreed with the denial because he suffered from "chronic osteomyelitis, [and] PTSD" (Post Traumatic Stress Disorder). (Doc. # 58) The request for reconsideration was denied. (Doc. # 60) Stevenson then filed a request for a hearing before an ALJ. (Doc. # 64) At that hearing the ALJ observed that Stevenson was last insured as of June 1974. Thus, it was "incumbent upon [Stevenson] to demonstrate that he has been continuously disabled, and was disabled at least prior to June of 1974." (Doc. # 32-33) During the hearing, Stevenson testified regarding his work history and the nature of his illness. In addition to his testimony, Stevenson provided a number of medical records. Those medical records provide the following series of events.

Stevenson was an active duty member of the Air Force in 1966.[2] In November of that year he developed a "severe right frontal headache which was not relieved with aspirin and which appeared off and on." (Doc. # 567) In March of 1967 Stevenson was admitted to the hospital "where an extensive workup revealed osteomyelitis of the frontal bone with a draining fistula tract in the forehead secondary to chronic right frontal sinusitis." Stevenson underwent surgery on March 23, 1967. During that surgery "he had an extensive excision of both frontal sinuses with complete obliteration of the sinuses." (Doc. # 567) On July 22, 1968, an Air Force doctor found that Stevenson was unfit for general military duty. (Doc. # 568) Stevenson was discharged on October 18, 1968. (Doc. # 158) The Veterans Administration stated that Stevenson's "service connected Frontal Sinus condition [was] . . . 50% disabling and [his] service connected disfigurement of face . . . [was] 10%

---

[2]Stevenson was in the Navy prior to his Air Force experience. It appears that Stevenson attributes his PTSD to his experiences in the Navy, not the Air Force. (Doc. # 126)

disabling." But based on Stevenson's "individual unemployability" he was entitled to benefits as if he were 100% disabled.[3] (Doc. # 153)

The medical records then depict numerous medical visits involving Stevenson's osteomyelitis and sinus difficulties. (Doc. # 155, 158) However, none of Stevenson's medical records from the 1960s through 2000 mention him suffering from PTSD. The only mention of any mental disorder during that time frame is found in a record from 1971. There it is observed that Stevenson underwent treatment for "personality changes." (Doc. # 535) The first specific mention of PTSD in the medical records is found on June 6, 2000. On that date one of Stevenson's doctors sent a letter to the Veterans Administration stating that Stevenson "suffers from post-traumatic stress disorder as a result of his military service." (Doc. # 194) Another of Stevenson's doctors wrote in 2003 that Stevenson suffers from PTSD and that the condition "dated back to at least the Vietnam war." (Doc. # 329)

After receiving all of this evidence, the ALJ issued a written decision stating that Stevenson was "not disabled within the meaning of the Social Security Act." (Doc. # 19) After recounting the five-step process for determining disability, the ALJ found that Stevenson had failed to satisfy the second step. Accordingly, Stevenson was denied benefits. Stevenson's appeal of the ALJ's decision was denied by the appeals council. (Doc. # 6) Stevenson then commenced this action seeking either a reversal of the ALJ's decision or a remand for further proceedings. The Commissioner agrees that further development of the record is necessary and asks this Court to remand for further proceedings.

I. Evaluation Process

There is a five-step process for determining if a person is "disabled" for purpose of receiving disability benefits. 20 CFR § 404.1520. At step one the Commissioner considers the claimant's work activity. If the claimant is involved in any "substantial gainful activity"

---

[3] An Air Force Physical Evaluation Board in 1973 found Stevenson "unfit because of physical disability." The board found that the disability was permanent but also found that the disability was *not* the "direct result of armed conflict or . . . caused by an instrumentality of war and incurred in line of duty during a period of war." (Doc. # 570)

the claimant is considered not disabled. 20 CFR § 404.1520(a)(4)(i). Step two considers "the medical severity" of the claimant's impairment(s). 20 CFR § 404.1520(a)(4)(ii). To qualify as sufficiently "severe" the "impairment or combination of impairments" must significantly limit the claimant's "physical or mental ability to do basic work activities." 20 CFR § 404.1520(c). Step three involves comparing the claimant's impairment to those listed in the regulations. 20 CFR § 404.1520(a)(4)(iii). If the claimant's impairment "meets or equals" one of the listed impairments then he will be considered disabled. Id. Step four consists of evaluating the claimant's ability to perform his past work. 20 CFR § 404.1520(a)(4)(iv). If he is able to perform his past work he is not disabled. And step five consists of determining whether the claimant can adjust to another type of work. 20 CFR § 404.1520(a)(4)(v). If the claimant is able to adjust to another type of work then he is not considered disabled. Id. Usually this process is conducted sequentially, but if the Commissioner "cannot find [the claimant] disabled or not disabled at a step" then the next step may be considered. 20 CFR § 404.1520(a)(4).

In the current case, the ALJ followed the sequential process but made inconsistent findings as to the first step and stopped after step two. Regarding the first step, substantial gainful activity, the ALJ stated, "Although the record is not entirely clear, the undersigned assumes, for purposes of this decision, that the claimant did not engage in substantial gainful activity from the alleged onset date to the date his insured status expired." (Doc. # 20) Later in his opinion, however, the ALJ stated ,"The claimant has not engaged in substantial gainful activity since the alleged onset of disability." Thus, it is unclear from the record whether or not the ALJ made a definitive finding as to step one.

As to step two, the ALJ stated that while he gave "great weight to the VA's disability rating . . . the record establishes only that [Stevenson] suffered from chronic sinusitis before his insured status expired. There is insufficient evidence to evaluate the claimant's residual functional capacity for the period 1969 to 1974." (Doc. # 21) The ALJ went on to find that "the record suggests [Stevenson] recently has developed mental illness" but there was "no

1  evidence that [Stevenson's] illness originated before his insured status expired." Finally, the
2  ALJ observed that Stevenson's claims regarding combat were belied by his service record
3  "which indicates that he was never overseas nor wounded while serving in the U.S. Navy
4  from 1961 to 1965." (Doc. # 21) Thus, the ALJ found that Stevenson suffered from "status
5  post sinusitis surgery" but that he did not have a "severe" impairment, meaning he "was not
6  under a 'disability' as defined in the Social Security Act." (Doc. # 21)

### A. Step One

8  The ALJ in this case appropriately began the disability inquiry with step one,
9  Stevenson's work history.  Stevenson is claiming that he became disabled before 1974 and
10 has remained disabled for the entire time up to the present.  Thus, if Stevenson engaged in
11 work between 1974 and the present then his claim for current disability benefits would fail.
12 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any
13 period in which you believe you are disabled may show that you are able to work at the
14 substantial gainful activity level."); see also Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir.
15 1996) ("The first step in determining whether a claimant is disabled is to ascertain whether
16 the claimant engaged in substantial gainful employment during a period of claimed
17 disability.").

18 There appears to be a genuine conflict in the record regarding Stevenson's work
19 activities during the last thirty years.  During the hearing, Stevenson testified that he had
20 worked at various times but the longest he had worked was four months.  Also, in a
21 psychiatric evaluation from 2004 the doctor recounted that Stevenson had recently had the
22 paint from his painting business stolen. (Doc. # 447)  No mention of a painting business was
23 made at the hearing.  And the record of Stevenson's earnings show that for many years
24 between 1959 and 2000 Stevenson had substantial earnings. (Doc. # 84)  In fact, the level
25 of Stevenson's earnings for some of those years should have created a presumption that he
26 was engaged in substantial gainful activity.  20 C.F.R. § 416.974 (providing, for example,
27 that a monthly income of five hundred dollars in 1998 gives rise to a presumption of gainful

activity). The evidence regarding gainful activity was directly contradicted by Stevenson's statement that he "became unable to work . . . on January 1, 1969" and remains unable to work up to the present. (Doc. # 80)

The ALJ made inconsistent findings when evaluating the employment evidence and determining whether Stevenson had in fact engaged in gainful activity. The ALJ stated both that he *assumed* Stevenson had not engaged in substantial gainful activity and that Stevenson had not engaged in such activity. When an ALJ makes inconsistent findings, a reviewing court has a number of options. Ragan v. Barnhart, 89 Fed.Appx. 160, 164 (10th Cir. 2004) (directing ALJ on remand to make consistent findings); Gronbeck v. Schweiker, 534 F. Supp. 642, 645 (D. S.D. 1982) (disregarding inconsistent finding); Brown v. Barnhart 362 F. Supp. 2d 1254, 1262 (D. Kan. 2005) (holding that inconsistent statements, standing alone, do not merit reversal but they should be reconciled on remand). Because an accurate determination of Stevenson's work history is crucial to his case and "[i]t is the ALJ's role to resolve evidentiary conflicts," the Court believes a remand is appropriate. Allen v. Sec'y of Health and Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984). On remand, the ALJ should resolve the apparent inconsistencies in its ruling. The Court believes that in this case a definitive conclusion as to step one should be made prior to the other steps being considered.[4]

**B. Step Two**

Pursuant to step two of the disability inquiry, the ALJ had to consider "the medical severity" of Stevenson's impairment(s). 20 CFR § 404.1520(a)(4)(ii). The Commissioner believes this case should be remanded for further development of the record regarding the "nature and severity" of Stevenson's disability. Also, Stevenson seeks either summary judgment or remand for the ALJ to evaluate other evidence of Stevenson's "physical and mental impairments." A remand is appropriate.

---

[4] Stevenson argues that the ALJ made a finding in his favor at step one and that the Commissioner cannot challenge that finding. Because the Court believes that the ALJ made inconsistent findings, rather than simply a finding in favor of Stevenson, it is appropriate to remand for further proceedings.

In cases such as this, "the ALJ has a special duty to fully and fairly develop the record." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ did not obtain all of Stevenson's medical records and the ALJ failed to obtain the opinion of a medical expert regarding Stevenson's impairments. See Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) (remanding for ALJ to call medical expert). The Court concludes that in this case the ALJ did not make all appropriate efforts to obtain Stevenson's medical records and did not call a medical expert. As a result of these actions the record was not "fully and fairly" developed. Heckler, 713 F.2d at 443. Thus, a remand is appropriate.

For the foregoing reasons,

Stevenson's Motion for Summary Judgment (Doc. # 6 ) is DENIED.

The Commissioner's Motion for Remand (Doc. # 11) is GRANTED.

DATED this 15th day of November, 2005.

_____
Roslyn O. Silver
United States District Judge